UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | CR. NO. 3:24-CR-194 |
| v. | : | (JUDGE MANNION) |
| **JOSE COLON,** | : | FILED SCRANTON |
| | : | OCT 2 3 2024 |
| **Defendant.** | : | Per ___JKC___  DEPUTY CLERK |

## MEMORANDUM

Presently before the court is Defendant Jose Colon's, a/k/a Efrain Colon, Joey Efrain and Jose J. Colon, motions to sever counts of the indictment, for a hearing pursuant to Federal Rule of Evidence 104(c), to compel disclosure of any and all *Brady* material in the Government's possession, to preserve his right to challenge the admissibility of any prior acts evidence pursuant to Federal Rule of Evidence 404(b), to compel production of *Jencks* material prior to trial, to compel preservation of "all rough notes, interview notes, report drafts and final reports" prepared by any federal, state or local government agent in connection with the investigation that led to the indictment, and for leave to submit further motions. (Docs. 33 and 34). The Government opposes these requests in their omnibus response thereto. (Doc. 35). For the reasons discussed below, the Court will **DENY** all of Defendant's motions.

I. <u>Background</u>

On July 30, 2024, a federal grand jury sitting in Scranton, Pennsylvania returned an indictment charging the Defendant with three counts of production of child pornography, in violation of 18 U.S.C. §2251(a). (Doc. 16). Each count of the indictment charges production as it relates to a separate victim (Minor Victims 1 through 3). (*Id.*).

On October 2, 2024, Defendant moved for the following relief: (1) severing the counts of the indictment; (2) ordering a hearing pursuant to F.R.E. 104(c), because Defendant alleges that after he was read his *Miranda* rights, he initially agreed to make certain statements to the investigating agents but later exercised his right to an attorney and wants to challenge the admissibility of any statements made thereafter;[1] (3) compelling the Government to disclose any and all *Brady* material in the Government's possession;[2] (4) ordering the Court to rule that Defendant retains the right to argue against any Government attempt to admit any evidence under F.R.E. 404(b), and to make any other pre-trial motions, generally; (5) compelling the

---

[1] Defendant alleges that "[a]fter acknowledging that [Defendant] invoked his rights, agents continued to speak with [Defendant] informally about various unrelated topics. The conversation included, among other things, questions about his relationships with certain family members who could be witnesses in this matter." (Doc. 34, p. 1)

[2] Defendant has not presented any arguments or made any allegations to show that any *Brady* material was withheld.

Government to produce *Jencks* material prior to trial and compelling the Government to preserve all rough notes, interview reports, report drafts and final reports; and (6) granting Defendant leave to submit further motions. The Court will address each requested relief in turn.

## II. Discussion

### A. Motion to Sever Counts of the Indictment

Defendant requests a severance of the multiple counts in the Indictment (each accounting for a separate victim) arguing that even though such counts may arguably be joined under Rule 8(a) of the Federal Rules of Criminal Procedure, a separate trial is nevertheless required under Rule 14 to prevent possible prejudice of a jury that may be unable to compartmentalize the evidence that Defendant does not anticipate will overlap. (Doc. 34, p. 2).

Federal Rules of Criminal Procedure 8 and 14 "are designed to promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968).

Pursuant to Federal Rule of Criminal Procedure 8(a), which governs the joinder of offenses in a federal criminal action:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a). "The joinder of [a] defendant's offenses is consistent with the purpose of Fed. R. Crim. P. 8 to promote economy of judicial and prosecutorial resources." *United States v. Gorecki*, 813 F.2d 40, 42 (3d Cir. 1987) (citing *United States v. Werner*, 620 F.2d 922, 928 (2d Cir. 1980)). "Joinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder." *United States v. Brown*, 2002 WL 32739530, at *3 (M.D. Pa. 2002) (quoting *United States v. Bullock*, 71 F.3d 171, 174 (5th Cir. 1995)). The party challenging joinder bears the burden of persuasion. *United States v. Avila*, 610 F.Supp.2d 391, 394-95 (M.D. Pa. 2009) (citing *Brown*, 2002 WL 32739530, at *3). "Additionally, a defendant claiming an improper joinder under Fed. R. Crim. P. 8(a) must prove actual prejudice from the misjoinder." *Gorecki*, 813 F.2d at 42 (citing *United States v. Lane*, 474 U.S. 438 (1986)).

Properly joined charges may, however, be severed pursuant to Federal Rule of Criminal Procedure 14 if the joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). Courts should sever charges "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilty or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *United States v. Silveus*, 542 F.3d 993, 1005-06 (3d Cir. 2008). The defendant must demonstrate that "clear and substantial prejudice" will result if all counts of the indictment are tried jointly. *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005). Clear and substantial prejudice exists if the jury would be unable "to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility." *Davis*, 397 F.3d at 182. Mere allegations of prejudicial joinder are insufficient to warrant severance, *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005), and separation of charges may be inappropriate if limiting instructions from the court can adequately manage the possibility that a jury might misuse evidence, *Zafiro*, 506 U.S. at 539 ("When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but ... less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.); *Brown*, 2002 WL 32739530, at *4.

Defendants bear a "heavy burden" in showing that severance is warranted. "Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Urban*, 404 F.3d at 775; *United States v. Avila*, 610 F. Supp. 2d 391, 398 (M.D. Pa. 2009).

Here, Defendant fails to meet his burden and set forth any of the relevant factual allegations to show a severance is warranted. Defendant concedes that the counts may be joined under Rule 8(a) as "arguably 'of the same or similar character,'" (Doc. 34, p. 2), but argues that the Court should nevertheless sever the counts under Rule 14 to prevent the risk of prejudice from a jury unable to compartmentalize non-overlapping information. Defendant claims that "[t]he pictures required for each victim are different, as well as the communications" and that "[t]he allegations in this case are extremely sensitive." (*Id.*). The Court is not persuaded.

Defendant's cursory allegations of prejudicial joinder are insufficient to warrant severance. The Government has countered Defendant's generalized and facile allegations with the following:

> [E]ach of the three production counts are intertwined and overlap with each other. Each of the charged production offenses occurs within the same approximate seven month span of time. Each of the three victims know each other and know Defendant's daughter (their school classmate) as they were each exposed to

Defendant through their relationships with that daughter. Each of the three victims were, at various times, in situations where Defendant would have been acting as a custodial adult to them. Each of the three victims report producing the child pornography they sent to the Defendant in exchange for either financial compensation or in exchange for other items of value that Defendant provided to them in person or via cash applications. Each of the three victims report that the requests for child pornography from the Defendant began when they were between the ages of 13-15-years-old. Each of the three victims received communication from Defendant on the same phone number. Each of the three victims report either attempted hands-on sexual contact or actual hands-on sexual contact from Defendant. Each of the three victims report that Defendant instructed them on what he wanted to see in the images that they sent him and that he told them or showed them how to pose. Each of the three victims' images of child pornography were located on the same cellphone seized from Defendant pursuant to a federal search warrant nearly four and a half years after it would have been produced.

Each of these production charges, therefore, is intertwined with the other two production charges. Each of the individual counts is also additional evidence of the nature of the relationship between Defendant and his victims, including to prove his motive, his opportunity, his intent, his preparation, his plan, his knowledge, his identity and an absence of a mistake or accident.

> ... The witnesses to the facts underlying the production counts also are, essentially, identical.

(Doc. 35, pp. 8-10). Thus, contrary to Defendant's assertions, the counts are intertwined, and the evidence as a whole may be indicative of the nature of the relationship between Defendant and his victims. As noted by the Government, this case is relatively straightforward, without any overly technical or scientific issues, and the jury will be able to compartmentalize the evidence supporting each count without difficulty. Furthermore, this Court is prepared to give limiting instructions to the jury as to how to evaluate the evidence on the separate charges. Accordingly, this motion is denied.

### B. Motion for a Hearing pursuant to F.R.E 104(c)

Defendant seeks a hearing pursuant to F.R.E. 104(c) "[i]n the event that the Government seeks to use any of [Defendant's post-*Mirandized*] statement[.]" (Doc. 34, p. 3). Specifically, Defendant alleges that after he was read his *Miranda* rights and exercised his right to an attorney, the conversation nevertheless continued "informally about various unrelated topics ... includ[ing], among other things, questions about his relationships with certain family members who could be witnesses in this matter." (Doc. 34, p. 1). The Government, Defendant argues, "should be precluded from

- 8 -

using anything he said after invoking [his rights] *in any way* at trial." (*Id.*, p. 4) (emphasis). The Court disagrees.

A person in custody must be apprised of his Fifth Amendment rights prior to being subjected to interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1960). The Supreme Court held in *Miranda* that preinterrogation warnings are required in the context of custodial interrogations given "the compulsion inherent in custodial surroundings." *Id.* at 458; *see also Yarborough v. Alvarado*, 541 U.S. 652, 661 (2004). "At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has the right to remain silent." *Miranda*, 384 U.S. at 467-68. The Supreme Court explained in *Rhode Island v. Innis*, 446 U.S. 291 (1980), that the Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *Id.* at 300-301. "That is to say that the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or action on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301.

When the Government elicits responses from the defendant in violation of his *Miranda* rights, such statements "may not be used by the prosecution

in its case-in-chief." *Vega v. Tekoh*, 597 U.S. 134, 141–142 (2022). However, a voluntary statement suppressible under *Miranda* may still be used for impeachment purposes. *Mincey v. Arizona*, 437 U.S. 385, 397–98 (1978); *see also Harris v. New York*, 401 U.S. 222, 226 (1971) ("The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances."). The Supreme Court explained that the right of the defendant to testify "cannot be construed to include the right to commit perjury[,]" and therefore "[h]aving voluntarily taken the stand, [the defendant] was under an obligation to speak truthfully and accurately, and the prosecution ... did no more than utilize the traditional truth-testing device[]" of impeachment by the defendant's own inconsistent statements. *Harris*, 401 U.S. at 225. On the other hand, "coerced statements—such as where 'the [speaker] is told to talk or face the government's coercive sanctions[ ]'—are deemed involuntary and therefore inadmissible for any purpose, including impeachment." *Rosen v. Superintendent Mahanoy SCI*, 972 F.3d 245, 260 (3d Cir. 2020) (quoting *New Jersey v. Portash*, 440 U.S. 450, 459 (1979)).

Here, Defendant has alleged that certain of his statements were elicited after he exercised his right to counsel. If true, then such statements

may not be used by the Government in its case-in-chief.[3] However, given such statements were voluntary, the statements may still be admissible solely to impeach defendant's credibility if he testified to the contrary. Defendant may use *Miranda* as a shield against self-incrimination but will not be allowed to use it as a sword to commit perjury. Accordingly, this motion is denied.

### C. Motion to Compel Immediate Disclosure of *Brady* Material

Defendant requests the immediate production of any and all *Brady* material in the possession of the Government. In *Brady*, the Supreme Court held that due process forbids a prosecutor from suppressing "evidence favorable to an accused upon request ... where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *United States v. Starusko*, 729 F.2d 256, 260 (3d Cir. 1984) (quoting *Brady v. Maryland*, 373 U.S. at 87). Exculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence as well as that, which might well alter the jury's judgment of the credibility of a crucial prosecution witness. *Id.* If the exculpatory nature of the evidence is doubtful,

---

[3] The Government has submitted to Defense counsel a proposed joint stipulation agreeing to "not elicit such testimony that prior to Defendant's arrest, he gave recorded statement to law enforcement" and "the Government will not elicit testimony regarding the contents of that recorded statement to law enforcement during its case-in-chief." (Doc. 35, p. 13).

- 11 -

the prosecution has an obligation to produce the file to the Court for *in camera* inspection. *See United States v. Cadet*, 727 F.2d 1453, 1467-68 (9th Cir. 1984). Any doubt regarding whether information should be disclosed should be resolved in favor of disclosure. *United States v. Agurs*, 427 U.S. 97, 108 (1976).

Here, the Court has already issued a Rule 5 Order on July 25, 2024, (Doc. 13), commanding the Government to timely disclose information favorable to the defense as to criminal liability on the charged offenses or mitigation of any punishment that may be imposed. (*Id.*, p. 1). Defendant also requests, with respect to each Government witness, to receive "any inconsistent statements, any inconsistent surveillance reports or surveillance notes; any inconsistent FBI 302 reports; any inconsistent interview notes of agents taken from interviews of witnesses; any statements of witnesses containing inconsistencies; materials showing bias, motive, or prejudice; and evidence of other wrong or prior bad acts." (Doc. 34, p. 5). Such material is already captured in the Rule 5 Order, where Magistrate Judge William I. Arbuckle noted that "[s]uch favorable information includes information that may cast doubt on the credibility of government witnesses." (Doc. 13, p. 1). Thus, Defendant's request has already been addressed by the Court's Rule 5 Order and the Government has acknowledged such order and "remains

both aware of, and committed to, its on-going discovery obligations." (Doc. 35, p. 14). Accordingly, this motion is denied as moot.

**D. <u>Motion to Preserve Right to Challenge Admissibility of Prior Acts Evidence</u>**

Defendant requests an order by the Court to preserve its right to challenge any Government attempt to admit any evidence under F.R.E. 404(b), and "to make any other pre-trial motions that may become necessary upon further disclosures from the government." (Doc. 34, p. 5). In response, the Government, takes no position on this request. (Doc. 35, p. 14).

Federal Rule of Evidence 404(b) provides that "[e]vidence of any other crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Rule 404(b) also identifies permitted uses of evidence of a crime, wrong or other act and the need for notice in a criminal case, and that such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Rule 404(b)(3) provides that

> In a criminal case, the prosecutor must:

>(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>(B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>(C) do so in writing before trial--or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3). The purpose of this pretrial notice requirement is to "reduce surprise and promote early resolution on the issue of admissibility." *United States v. Stanko*, 2021 WL 2349392, at * 15 (W.D. Pa. 2021). What constitutes "reasonable notice" depends on "the circumstances and complexity of the prosecution." *United States v. Searcy*, 2020 WL 7066335, at * 10 (W.D. Pa. 2020) (citation omitted).

Here, the Government has not identified, nor has it provided any notice of, any evidence of prior crimes or bad acts that it seeks to introduce pursuant to Rule 404(b). Should the Government identify any such evidence in advance of trial, the Government must provide Defendant reasonable notice in accordance with the Federal Rules of Evidence. In such an event, Defendant is welcome to file any objections or other filings related thereto. Unless and until that circumstance arises, this Court is not inclined to make

a ruling on such matter. Moreover, the Government has acknowledged its obligation and indicated its intent to fully comply with the requirements of evidentiary rules. Accordingly, this motion is denied.

### E. Motion to Compel Production of *Jencks* Material Pre-Trial and Preservation of Certain Material

Defendant requests an order compelling the Government to produce *Jencks* material prior to trial and preserve "all rough notes, interview reports, report drafts and final reports." (Doc. 34, pp. 5-6).

With respect to *Jencks* material, Defendant argues that "[e]arly disclosure of *Jencks* material will expedite trial by preventing unnecessary delays and interruptions throughout the course of trial," and that "[i]t would be 'grossly unfair' to permit the impeachment of witnesses 'which could not fairly be said to be the witness' own rather than the product of the investigator's selections, interpretations and interpolations.'" (Doc. 34, p. 6) (quoting *United States v. Ramos*, 27 F.3d 65, 70 (3d Cir. 1994)). Defendant, however, provides neither factual allegations nor legal precedent to support this request.

The Jencks Act, 18 U.S.C. §3500, requires the government to provide the defense with statements of witnesses that the government intends to call at trial. *See United States v. Robles*, 2018 WL 3217640 at *2 (M.D. Pa. July

- 15 -

2, 2018). However, "there is no authority by which th[e] court can compel the government to provide Jencks Act statements prior to the time any government witness has testified on direct examination at trial." *Id.* (quoting *United States v. Yawson*, 2014 WL 3401663, *3, (W.D. Pa. July 10, 2014). Thus, the Government has no duty to make an earlier disclosure. Nevertheless, the Government responded that it "has no objection to 'early' disclosure of *Jencks* materials on or before the Friday prior to trial." (Doc. 35, p. 15). To that end, this Court encourages the Government to follow through on its offer even though it is not required to do so. Accordingly, this motion is denied.

With respect to the preservation of "all rough notes, interview notes, report drafts and final reports," (Doc. 34, p. 5), Defendant appears to merely recite an obligation that the Government already recognizes. (Doc. 35, p. 15) ("The Government recognizes and acknowledges its obligations to preserve discoverable evidence in a criminal case pursuant to, among other cases, [*Vella*, *Brady*, and *Giglio*], and the Federal Rules of Evidence and the Federal Rules of Criminal Procedure, generally."). Further than that, Defendant neither articulates any specialized need to further admonish the Government about on-going discovery obligations nor does Defendant allege any

misgivings about the discovery process thus far. Accordingly, this motion is denied as superfluous.

### F. Motion for Leave to Submit Further Motions

Defendant requests leave of court "to bring any additional motions which may become necessary based upon the Government's response to the present motions or new facts uncovered by the defendant's ongoing investigation into this case." (Doc. 34, p. 6). The Government speculates, to which this Court concurs, that Defendant seeks to bring additional motions "presumably outside of the pretrial motions deadline that the Court has set." (Doc. 35, p. 16). If so, this motion is denied. This Court does not have, nor will it start, a practice of granting premature leaves to file unidentified motions. If Defendant has a particular relief it seeks from the Court, he is welcome to identify and brief this Court on such matter. Before such time, the Court will make no ruling.

### IV. Conclusion

Based on the foregoing, the court will **DENY** all of Defendant's motions. (Docs. 33 and 34). An appropriate order follows.

_____
MALACHY E. MANNION
United States District Judge

**DATE: October 22, 2024**
24-194-01